1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS P. BOWLING,<br><br>                                    Petitioner,<br><br>        vs.<br><br>ROBERT J. HERNANDEZ, Warden,<br><br>                                    Respondent. | Civil No. 06cv2477-JLS (NLS)<br><br>**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE DENIAL OF PETITION FOR WRIT OF HABEAS CORPUS** |

        This Report and Recommendation is submitted to United States District Judge Janis L. Sammartino pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the United States District Court for the Southern District of California.

## I.

## FEDERAL PROCEEDINGS

        Dennis P. Bowling ("Petitioner"), is a California prisoner proceeding pro se with a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. No. 1.) Petitioner was convicted of first degree murder and sentenced to life imprisonment with the possibility of parole in 1977.  He challenges here the finding of unsuitability for parole made at his eleventh parole hearing, held in 2004, claiming that he has been denied due process and equal protection in violation of the Fourteenth Amendment.  (Petition ["Pet."] at 6; Memorandum of Points and Authorities attached to Petition ["Pet. Mem."] at 4-16.)

1    Respondent initially moved to dismiss the Petition on the basis it was untimely and failed
2    to present a federal question.  (Doc. No. 10.)  The motion was denied, and Respondent filed an
3    Answer to the Petition accompanied by a Memorandum of Points and Authorities in support
4    thereof.  (Doc. No. 21.)  Respondent contends that: (1) Petitioner has no federally-protected
5    liberty interest in parole; (2) even if this Court recognizes such an interest, Petitioner received
6    all the process he was due in connection to the deprivation of that interest, and therefore the
7    adjudication of the due process claim by the state courts was neither contrary to, nor involved
8    an unreasonable application of, clearly established federal law; and (3) Petitioner's equal
9    protection claim is not cognizable on federal habeas, but even if it is, the adjudication of the
10   claim by the state courts was neither contrary to, nor involved an unreasonable application of,
11   clearly established federal law.  (Answer ["Ans."] at 3; Memorandum of Points and Authorities
12   in Support of Answer ["Ans. Mem."] at 6-15.)  Petitioner has filed a Traverse.  (Doc. No. 25.)

13                                          **II.**

14                              **STATE PROCEEDINGS**

15    On February 28, 1977, Petitioner was sentenced to life imprisonment with the possibility
16   of parole after he was convicted of first degree murder following a jury trial.  (Respondent's
17   Motion to Dismiss ["MTD"], Ex. 1.)  Petitioner was denied parole beginning in 1982, up through
18   his eleventh parole hearing held on December 22, 2004.  (Id., Ex. 2.)  Petitioner was again
19   denied parole following a hearing held on October 25, 2006 (see id.), but does not challenge that
20   decision in this action.

21    Petitioner challenged the December 22, 2004 denial of parole in a habeas petition filed
22   in the state superior court on May 4, 2005, presenting the same claims presented here.  (Id., Ex.
23   4.)  That petition was denied on the merits in a written order filed June 29, 2005.  (Id. Ex. 5.)
24   Petitioner presented the same claims in a habeas petition filed in the appellate court on August
25   23, 2005, which was denied on the merits in a written order filed September 20, 2005.  (Id. Exs.
26   6-7.)  He filed a petition for review in the state supreme court on October 19, 2005, presenting
27   the same claims.  (Id., Ex. 8.)  That petition was summarily denied on September 13, 2006,
28   without citation of authority or a statement of reasoning.  (Id., Ex. 9.)

# III.

## UNDERLYING FACTS

The following statement of facts is taken from the appellate court opinion on direct appeal, which was quoted and relied upon by the parole board.  This Court gives deference to state court findings of fact.  Sumner v. Mata, 449 U.S. 539, 545-47 (1981) (stating that deference is owed to factual findings of both state trial and appellate courts).  The appellate court stated:

> We summarize the facts in the light most favorable to the verdict and judgment.  The murder victim, Paul Daniels, was a widely known police informant.  He was also a member of the gay community and often informed the police about crimes committed by homosexuals.  In 1975, Daniels gave the police information causing the arrest of Bowling and his homosexual lover, Mark Maggio.  Bowling feared Daniels; he thought Daniels was a "narc."  Bowling was jealous of Daniels, for [Bowling] lived with and was sexually involved with Maggio.  Bowling thought Daniels was trying to replace him as Maggio's lover in a homosexual triangle.

> In the early morning hours of September 4, Maggio, Jeff Deatherage and Daniels, the victim-to-be, were present at a gay bar in San Diego.  At closing time, the three departed in Daniels' car.  Daniels drove first to a Jack-in-the-Box, purchased some food, and drove to Deatherage's home and dropped him off at about 3:00 a.m.  Pursuant to a plan made earlier with Bowling, Maggio then brought Daniels to the Bowling-Maggio residence.  Daniels did not know Bowling would be at home.  Bowling, from a place of concealment in the bedroom, heard Maggio and Daniels talking.  He loaded his Reuger .44 caliber magnum revolver, came out of his hiding place, pointed the gun at Daniels, and fired a bullet into the floor.  Neighbors, the Clarkes, heard a loud gun shot coming from Bowling's apartment at approximately 4:00 a.m.  The two tied Daniels' hands and feet with rope, bound his mouth with tape and forced him into his own car.  They then drove to a secluded spot near Torrey Pines Glider Port, where Bowling shot Daniels in the head, killing him.  Daniels' car was driven from the murder scene and abandoned.

> Bowling confessed the murder to two friends, William Reyes and James Karalles.  Bowling took Karelles to the Torrey Pines Glider Port and showed him where he had murdered Daniels.  Karalles informed the police of Bowling's confession of murder.  Bowling's further confession in conversations with Karalles was taped.  Bowling expressed disappointment to Karalles no one had asked him how it felt to kill someone.  When Karalles obliged, Bowling said:

> "No feeling at all. . . .  The only part that bothered me the grossest aspect of it, was that when I shot him, even though I couldn't see the wound, I could hear the blood gushing out of his head like a burbling brook."

> Daniel's body was found by two motorcyclists the following day at approximately 2:30 p.m.  Daniels died from a large caliber gun shot wound.  The bullet entered the rear of the head almost in the neck line.  Ligature marks on his writs and ankles indicated Daniels had been tied before being murdered.

06cv2477

1
2
3
4

Bowling's residence was searched. Lead fragments from a bullet fired into the carpet were found lodged beneath it. Comparison of these lead fragments and the fragments recovered from the head of the victim revealed a high probability they were from the same batch of lead. Samples of sand and human hair were recovered from Daniel's car. The sand from the car was consistent with sand found at the Torrey Pines murder site. The human hair found in the car was consistent with Bowling's hair.

5
6
7
8

Bowling denied killing Daniels. He testified Maggio had come home and discharged a "seal bomb" in the apartment at 4:00 a.m. September 4. He explained his admission to Karalles were made "to play along with the informer"; Karalles had solicited him to murder a witness in a pending federal court case. This caused Bowling to fear for his own safety; he therefore sought information from Karalles to give the police.

9

(Ans. Ex. 2, People v. Bowling, No. 8599, slip op at 2-4 (Cal.App.Ct., Mar. 23, 1978).)

10

At the conclusion of the December 22, 2004 parole hearing, the parole board made the

11

following findings:

12
13
14
15
16
17
18
19
20
21
22
23
24

Mr. Bowling, the Panel reviewed all of the information received from the public and relied on the following circumstances in concluding that you're not yet suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if released from prison. And of course, we considered the commitment offense, which certainly was, we believe, went beyond the minimum. This was the murder of Paul Daniels, who was bound and gagged and forced into his own vehicle and driven out to Torrey Pines at the glider strip. That's where he was ordered out of his car and executed. This was an offense that was very callous and was certainly carried out in a dispassionate and a calculated manner. And at this point, the motive for the crime is inexplicable. Going back through everything, there are certainly – there are explanations in the Probation Officer's report, as to the possibility that it had to do with jealousy. But at this point, there really is no explanation for the murder of this young man. The prisoner has failed previous grants of probation and that was one of the other considerations that we made in reviewing the case. And he has not sufficiently participated in beneficial self-help. There has been nothing since 1998, in spite of the fact that the Board has repeatedly recommended – and I went back through and looked at the decisions. The Board has recommended self-help. The inmate has had only three serious disciplinary reports and the last one was back in 1991, so it's been numerous years. The psychiatric evaluation, authored by Dr. Mura, is somewhat contradictory and (indiscernible) confusing is the right word, but a little – it's not comfortable. She states on the one hand, that it appears that Mr. Bowling is at a low risk for future violence. But she speaks a lot about the fact that he has, what she refers to as large blind spots and she considers the fact that he has a lack of insight to be a caveat to his risk for future violence. In fact, she says:

25
26
27

"The assessment of dangerousness boils down to the question of whether the before mentioned positive parole factors outweigh Mr. Bowling's lack of remorse for and his insistence of his innocence for the taking of another human life."

28

She states repeatedly in here that there's a lack of insight and that, in fact, not only is there a lack of insight, but there seems to be a real effort to not develop insight regarding the commitment offense. And therefore, she states at one point that he's

-4-

1    probably as – that he is (indiscernible) going to be.  And that just doesn't – that
2    just isn't something that gives us a lot of comfort.  She also notes that he has a
     Personality Disorder and with Antisocial and Narcissistic and Paranoid Features.
3    She does say that it's significantly improved over the past, but it's just a somewhat
     contradictory and not completely supportive evaluation.  Another area of concern
4    was the lack of confirmation on the parole plans.  And I understand Mr. Bowling's
     parents are elderly and certainly, we can take that into consideration.  But even,
5    once again, Dr. Mura talks about the fact that his parole plans need firming up.
     And that he doesn't seem to have given enough consideration for the fact that he's
6    been here for a long time.  She says he – there's a lack of specificity in his parole
     plans.  He needs more detail and confirmation.  He would also benefit from a
7    decompression therapeutic program to aid him for preparing for reentry into
     society after so many years.  So the parole, the lack of firmness in the parole plans
8    is of concern to the Panel.  The hearing Panel notes that in response to the 3042
     notices, the District Attorney of San Diego County had a representative who
9    appeared today and spoke in opposition to a finding of suitability at this time.  We
     want to commend Mr. Bowling for being disciplinary free since 1991 and that's
10   been – that's quite a long time.  However, the positive aspects currently do not
     outweigh the factors of unsuitability.  The Panel simply recommends that you
11   remain disciplinary free, Mr. Bowling.  That you – and that you participate in self-
     help.  I know that you said that substance abuse isn't an issue, so that's not
12   something that you necessarily would be interested in but there are a lot of other
     things that you could be doing.  There's a lot that you could be doing, even if it's
13   just in cell study.  And especially in light of the fact that the counseling report
     talks about a lack of insight.  And I really think that it's something that would be
14   of benefit for you to do and bring back to the next Panel, so they can see that it's
     something that you're making an effort at.  The other – the only other thing I
15   would recommend is that you – is that you firm up your parole plans in the next
     year, because that's going to be another Panel, that they're going to be looking at.
16   You know, those are just the kinds – those are the kinds of things that any Panel
     is going to want to see you putting effort into.  So that they know that you're
17   really thinking about how you're going to – how you're going to – once you –
     once you get out there after this many years of being in prison, how you're going
18   to stay on your feet and how you're going to move forward.  And if you don't
     have a good plan in place, it's going to make everybody uncomfortable.  So those
19   are our recommendations and that completes the reading of the decision.

20   (Ans. Mem. Ex. 1 at 50-54.)

21                                   **IV.**

22                        **PETITIONER'S CLAIMS**

23        (1) Petitioner was denied his Fourteenth Amendment right to due process because: (a) the

24   parole board lacked the authority under state law, and/or exceeded the authority conferred upon

25   it by statute, to deny parole after the initial parole consideration hearing; and (b) the parole

26   board's reliance on static pre-commitment factors such as his commitment offense and prior

27   history combined to deprive him of his federally-protected liberty interest in parole release. (Pet.

28   Mem. at 2-14.)

(2)  Petitioner was denied his Fourteenth Amendment right to equal protection because: (a) he was denied the benefit of a defined state policy which mandates that statutes must be interpreted as favorably to his class as reason permits; (b) the parole board has been permitted to exceed the authority conferred on it by statute; and (c) he has been denied the benefit of court precedent interpreting state law.  (Pet. Mem. at 14-16.)

**V.**

**DISCUSSION**

For the following reasons, the Court finds that Petitioner's federal right to due process was not denied, and that he has failed to demonstrate that he was denied equal protection of the laws.  Accordingly, the Court recommends the Petition be denied.

**A.     Standard of Review.**

Title 28, United States Code, § 2254(a), sets forth the following scope of review:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in <u>violation of the Constitution or laws or treaties of the United States</u>.

28 U.S.C.A. § 2254(a) (West 2006) (emphasis added).

Under 28 U.S.C. § 2254(d):

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254(d) (West 2006).

A state court's decision may be "contrary to" clearly established Supreme Court precedent: (1) "if the state court applies a rule that contradicts the governing law set forth in [the Court's] cases" or (2) "if the state court confronts a set of facts that are materially

1   indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from

2   [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). A state court

3   decision may involve an "unreasonable application" of clearly established federal law, "if the

4   state court identifies the correct governing legal rule from this Court's cases but unreasonably

5   applies it to the facts of the particular state prisoner's case." Id. at 407. An unreasonable

6   application may also be found, "if the state court either unreasonably extends a legal principle

7   from [Supreme Court] precedent to a new context where it should not apply or unreasonably

8   refuses to extend that principle to a new context where it should apply." Id.

9        "[A] federal habeas court may not issue the writ simply because the court concludes in

10   its independent judgment that the relevant state-court decision applied clearly established federal

11   law erroneously or incorrectly. . . . Rather, that application must be objectively unreasonable."

12   Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003) (internal quotation marks and citations omitted).

13   Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the United

14   States Supreme] Court's decisions." Williams, 529 U.S. at 412.

15        Habeas relief is also available if the state court's adjudication of a claim "resulted in a

16   decision that was based on an unreasonable determination of the facts in light of the evidence

17   presented in state court." 28 U.S.C.A. § 2254(d)(2) (West 2006). In order to satisfy this

18   provision, Petitioner must demonstrate that the factual findings upon which the state court's

19   adjudication of his claims rest, assuming they rest on a factual determination, are objectively

20   unreasonable. Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

21   **B.     Petitioner is not Entitled to Habeas Relief.**

22        In Ylst v. Nunnemaker, 501 U.S. 797, 804 (1991), the Court adopted a presumption which

23   gives no effect to unexplained state court orders but "looks through" them to the last reasoned

24   state court decision. The Court will therefore look through the silent denial by the state supreme

25   court to the appellate court opinion, which denied Petitioner's claims stating:

26            In 1976 a jury convicted petitioner Dennis Bowling of first degree murder.
        He is serving a sentence of life in prison with the possibility of parole. In
27        December 2004, the Board of Prison Terms, now the Board of Parole Hearings
        (Board), found him unsuitable for parole based on the circumstances of the
28        commitment offense, prior failed grants of probation, the need for further

-7-

participation in self-help, an equivocal psychiatric evaluation, lack of sufficiently specific parole plans, and the district attorney's opposition.

Bowling contends the Board's decision deprived him of due process because the Board no longer has the authority to deny him parole given the length of time he has been incarcerated, the Board relied upon invalid criteria to deny him parole, there is insufficient evidence to support the Board's finding of unsuitability, and the Board's continued reliance on his commitment offense to deny him parole impinges on his liberty interests. We conclude Bowling has failed to state a prima facie case for relief. (*People v. Duvall* (1995) 9 Cal.4th 464, 475.)

The Board is not required to grant Bowling parole merely because Bowling's minimum eligible parole date has passed or his incarceration has exceeded the matrix of base terms for his offense. Rather, the Board may properly deny Bowling parole if the Board decides it would be unsafe to grant him parole and the decision is supported by some evidence. (*In re Dannenberg* (2005) 34 Cal.4th 1061, 1071.)

The criteria relied upon by the Board to assess Bowling's suitability for parole is valid. (*In re Seabock* (1983) 140 Cal.App.3d 29, 38-39.) Although Bowling failed to provide a complete record of the parole hearing, the record contains sufficient evidence to support the Board's decision. Specifically, there is some evidence: (1) the offense was carried out execution style for trivial reasons; (2) Bowling has not availed himself of self-help opportunities; (3) the most recent psychosocial evaluation is equivocal in its assessment of Bowling's potential for success on parole; and (4) Bowling's parole plans are vague.

Finally, Bowling's liberty interests are not impinged by the Board's reliance on the circumstances of his commitment offense. The Board may rely on the circumstances of Bowling's commitment offense because the circumstances were more than the minimum necessary to convict him and Bowling has not established that his length of incarceration is grossly disproportionate to his individual culpability. (*In re Dannenberg, supra*, 34 Cal.4th at pp. 1095-1096.) [¶] The petition is denied.

(MTD Ex, 7, <u>In re Bowling</u>, No. D047011, slip op. at 1-3 (Cal.App.Ct. Sept. 20, 2005).)

**1)    Due Process**

Clearly established federal law provides that Petitioner may demonstrate a procedural due process violation by showing that: (1) a federally-protected life, liberty or property interest exists and has been subject to interference by the state; and (2) the procedures attendant upon the deprivation of that interest were constitutionally insufficient. <u>Kentucky Dept. of Corrections v. Thompson</u>, 490 U.S. 454, 460 (1989). In <u>Greenholtz v. Inmates of Nebraska Penal and Corr. Complex</u>, 442 U.S. 1 (1979), the Supreme Court found that the expectancy of release provided by a Nebraska parole statute "is entitled to some measure of constitutional protection," but stated that "we emphasize that this statute has unique structure and language and thus whether any

other state statute provides a protectible entitlement must be decided on a case-by-case basis." Id. at 12; see also Board of Pardons v. Allen, 482 U.S. 369, 377-78 (1987) (holding that mandatory language in Montana parole statute, like the Nebraska statute, created a presumption that parole will be granted, thereby giving rise to a protected liberty interest). The Greenhotz Court further held that when an inmate is afforded "an opportunity to be heard" at a state parole hearing, and is informed "in what respects he falls short of qualifying for parole," the inmate has been given all "the process which is due." Greenhotz, 442 U.S. at 16.

The Ninth Circuit has applied Greenhotz and Allen to find that mandatory language in the California parole statute (Cal. Penal Code § 3041), "gives rise to a cognizable liberty interest in release on parole," McQuillion v. Duncan, 306 F.3d 895, 902 (2002), which is "created, not upon the grant of a parole date, but upon the incarceration of the inmate." Biggs v. Terhune, 334 F.3d 910, 915 (9th Cir. 2003).   After McQuillion and Biggs were decided, the California Supreme Court held in In re Dannenberg, 34 Cal.4th 1061 (2005), that the language in Cal. Penal Code § 3041 does not establish a mandatory duty to set a release date for indeterminate life inmates.  Id. at 1087-88.  However, in Sass v. California Board of Prison Terms, 461 F.3d 1123, 1127 (9th Cir. 2006), the Ninth Circuit held that California prisoners continue to have the liberty interest in parole recognized in McQuillion and Biggs even after In re Dannenberg.  The Sass Court found that In re Dannenberg addressed only the narrow issue of whether the parole board must engage in a comparative proportionality analysis in setting parole release dates pursuant to Cal. Penal Code § 3041(a) before determining whether an inmate is suitable for parole under § 3041(b), but that the federally-protected liberty interest in a finding of suitability for parole under § 3041(b), which is the liberty interest at issue in the instant case, remains clearly established within the meaning of AEDPA.  Sass, 461 F.3d at 1127-28.

In Superintendent of the Mass. Corr. Inst. v. Hill, 472 U.S. 445 (1985), the Supreme Court held that the revocation of good-time prison custody credits comports with the minimum requirements of due process only when the findings of the prison disciplinary board are supported by some evidence in the record.  Id. at 455-56.  The Ninth Circuit has held that the Hill standard applies to state parole proceedings, "because 'both directly affect the duration of

the prison term.'" Sass, 461 F.3d at 1128, quoting Jancsek v. Oregon Board of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987).  The Sass Court thus held that due process requirements are satisfied if "some evidence" exists in the record to support the parole board's decision.  Sass, 461 F.3d at 1128.  In applying this standard, the Court stated:

> To determine whether the some evidence standard is met "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.  Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board."

Id., quoting Hill, 472 U.S. at 455-56.

The evidence relied upon by the parole board "must have sufficient indicia of reliability," and "continued reliance in the future on an unchanging factor, [such as] the circumstances of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." Biggs, 334 F.3d at 915-17.  The Ninth Circuit has recently reiterated that the Greenholtz, Allen and Hill standards are clearly established federal law for AEDPA purposes applicable to parole hearings such as the one at issue here.  Irons v. Carey, --F.3d --, 2007 WL 2027359 (9th Cir. July 13, 2007), rehearing denied, --F.3d--, No. 05-15275 (9th Cir. Nov. 6, 2007).

Respondent contends that Petitioner has no federally-protected liberty interest in parole (Ans. at 3 n.1), and argues that even if he does, only the "opportunity to be heard" and "statement of reasons for the denial" requirements of Greehholtz constitute clearly established federal law applicable to state parole proceedings.  (Ans. Mem. at 10-12.)  Respondent acknowledges that the Ninth Circuit has already decided these issues in Sass and Irons, but contends that intervening United States Supreme Court authority has effectively overruled those cases.  (Id.)  Specifically, Respondent argues that Carey v. Musladin, 549 U.S. ___, 127 S.Ct. 649 (2006), and Schriro v. Landrigan, 550 U.S. ___, 127 S.Ct. 1933 (2007), impliedly overruled the Ninth Circuit's extension of the "some evidence" rule of Hill from the prison disciplinary context to the parole hearing context.

In Musladin, several members of a murder victim's family sat in the front row of the spectator section at trial wearing buttons with a photograph of the victim.  Musladin, 127 S.Ct.

at 651.  The Ninth Circuit applied, as clearly established federal law, two Supreme Court decisions which set forth a test for determining whether state-sponsored practices are so inherently prejudicial that they must be justified by an essential state policy or interest, namely, Estelle v. Williams, 425 U.S. 501 (1976) (standing trial in prison issue clothes), and Holbrook v. Flynn, 475 U.S. 560 (1986) (state troopers seated immediately behind the defendant). Musladin, 127 S.Ct. at 652.  The Supreme Court found that because it had never addressed a claim that private-actor courtroom conduct was so inherently prejudicial as to deprive a defendant of a fair trial, the Ninth Circuit had erred in applying Estelle and Flynn, cases dealing with state sponsored practices that were required to be justified by an essential state policy or interest, as clearly established federal law applicable to private-actor conduct.  Id. at 654. Similarly, in Landrigan, the defendant refused to allow defense counsel to present mitigating evidence at a sentencing hearing, and the state court concluded that the defendant could not establish prejudice under Strickland v. Washington, 466 U.S. 668 (1984) based on his counsel's failure to investigate further possible mitigating evidence.  Landrigan, 127 S.Ct. at 1941.  The Supreme Court found that the Ninth Circuit had erred when it found the state court's refusal to apply Strickland to be objectively unreasonable, because the Supreme Court had never addressed the situation where a criminal defendant interferes with their counsel's efforts to present mitigating evidence to a sentencing court.  Id.

Although Sass predates Musladin, the opinion in Irons, which reaffirmed Sass, was announced over seven months after Musladin was decided and two months after Landrigan. Respondent contends that "the precedential value of *Irons* is questionable because it did not address *Musladin* and the petitions for rehearing en banc in the case remain pending."[1]  (Ans. Mem. at 11.)  In order for this Court to find that Musladin or Landrigan effectively overruled Irons, Sass and Jancsek, it is necessary that "the relevant court of last resort must have undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable."  Miller v. Gammie, 335 F.3d 889, 900 (9th Cir. 2003).  The Court in

---

[1]  After Respondent filed the Answer, the Ninth Circuit denied rehearing en banc in Irons. See Irons v. Carey, --F.3d --, 2007 WL 2027359 (9th Cir. July 13, 2007), rehearing denied, --F.3d--, No. 05-15275 (9th Cir. Nov. 6, 2007).

1    <u>Musladin</u> noted there was a split in the circuits regarding whether <u>Estelle</u> and <u>Flynn</u> applied to

2    spectator conduct, <u>Musladin</u>, 127 S.Ct. at 654, and the three concurring justices would have

3    found that clearly established federal law applied to the spectator conduct at issue.  <u>Id.</u> at 655-56

4    (Stevens, J., concurring) (characterizing as dicta the Court's prior language in <u>Williams</u>

5    interpreting "clearly established federal law" as restricted to holdings of the Court at the time

6    of the decision); <u>id.</u> at 656-57 (Kennedy, J., concurring) (noting that Supreme Court precedent

7    establishing a rule against coercive or intimidating atmosphere at trials applied to spectator

8    conduct); <u>id.</u> at 657-58 (Souter, J., concurring) (applying <u>Estelle</u> and <u>Flynn</u> as clearly established

9    federal law).  Likewise, the <u>Landrigan</u> decision was 5-4, with the four dissenting justices willing

10   to apply <u>Strickland</u> as clearly established federal law.  <u>Landrigan</u>, 127 S.Ct. at 1945 (Stevens,

11   J., dissenting).  Thus, reasonable jurists disagree with respect to application of the term "clearly

12   established federal law" when determining whether existing Supreme Court precedent, which

13   is not directly on point, qualifies as clearly established federal law in any given context.  The

14   Ninth Circuit extended <u>Hill</u> from the prison disciplinary context to the prison parole context,

15   "because both directly affect the duration of the prison term."  <u>Sass</u>, 461 F.3d at 1128.  That

16   holding is not undercut by <u>Musladin</u> or <u>Landrigan</u> "in such a way that the cases are clearly

17   irreconcilable," for at least two reasons.  First, the <u>Musladin</u> and <u>Landrigan</u> cases interpret the

18   same phrase, "clearly established federal law," under the same standard (as announced in

19   <u>Williams</u>) as the Ninth Circuit does in <u>Sass</u>, and reasonable jurists can disagree with the

20   application of that standard in any given context, including the one at issue here.  Second, even

21   assuming <u>Musladin</u> and <u>Landrigan</u> tightened the definition of "clearly established federal law"

22   to require the Supreme Court to have reached substantially the same issue, the Supreme Court

23   in <u>Hill</u> did in fact apply the "some evidence" standard to hearings held in custodial settings

24   which affect the duration of a prisoner's sentence.  <u>Sass</u>, 461 F.3d at 1128.  Thus, the holdings

25   of <u>Musladin</u> and <u>Landrigan</u> are not "clearly irreconcilable" with <u>Sass</u> and <u>Irons</u>.  <u>Gammie</u>, 335

26   F.3d at 900; <u>see also</u> <u>LaJoie v. Thompson</u>, 217 F.3d 663, 669 n.6 (9th Cir. 2000) (noting that

27   Ninth Circuit cases may be persuasive authority for purposes of determining what law is "clearly

28   established.").  Although the dissenting Justices in the Order denying rehearing en banc in <u>Irons</u>

1   make a compelling case for the opposite conclusion, see Irons v. Carey, --F.3d --, No. 05-15275

2   (9th Cir. Nov. 6, 2007) (Kleinfeld, J., dissenting from denial of rehearing en banc), the rejection

3   of that position by the Ninth Circuit which is implicit in the denial of rehearing en banc

4   undermines Respondent's position.  The Court therefore recommends rejecting Respondent's

5   contention that Petitioner does not have a federally-protected liberty interest in parole, or that

6   the "some evidence" standard of Hill does not apply.  The issue is not dispositive, however,

7   because, for the following reasons, the Court finds that even if those standards do apply, habeas

8   relief is unavailable.

9       Petitioner first contends that the appellate court erred in relying on In re Dannenberg in

10   determining that the parole board may deny parole if the decision is supported by some evidence.

11   (Pet. Mem. at 4-5.)  He contends that Cal. Penal Code § 3041(b) provides that the parole board

12   "shall set a parole release date" at their first meeting, which is required to be held, other than by

13   valid postponement, one year before a prisoner's minimum parole eligibility date.  (Id. at 5-8.)

14   Thus, Petitioner contends, the parole board has discretion to postpone setting a parole release

15   date, but only at its first meeting, and is required by statute to set a parole release date at its

16   second meeting.  (Id. at 8-9.)  He contends that the parole board, as an administrative agency,

17   has no discretion to legislate or exceed the limits of its authority conferred by Cal. Penal Code

18   § 3041(b).  (Id. at 9.)  The failure of the parole board to set a parole release date at his eleventh

19   consecutive parole hearing, some twenty years after his minimum eligibility date, has, in

20   Petitioner's opinion, usurped the judicial function by effectively resentencing him from life with

21   a constitutional presumption that parole will be granted, to a sentence of life without the

22   possibility of parole.  (Id. at 10-11; Traverse at 7-8.)

23       Respondent contends that Petitioner's claim that state laws were violated is not

24   cognizable on federal habeas, and that even if it is, no state laws were violated.  (Id. at 8-9.)

25   Respondent is correct that clearly established federal law provides that federal habeas relief is

26   not available merely for an alleged error in the interpretation or application of state law.  Estelle

27   v. McGuire, 502 U.S. 62, 67-68 (1991).  However, as set forth above, the Supreme Court and

28   the Ninth Circuit have held that clearly established federal law provides that a liberty interest

1    protected by the Fourteenth Amendment has been created by mandatory language in California's

2    parole statute.  <u>Greenholtz</u>, 442 U.S. at 12-16; <u>Allen</u>, 482 U.S. at 377-78; <u>Sass</u>, 461 F.3d at 1127-

3    28.  Nevertheless, Petitioner's contention that California law divested the parole board of

4    discretion to deny him release on parole is without merit.

5          Petitioner contends the appellate court erred in relying on <u>In re Dannenberg</u> as holding

6    that although Cal. Penal Code § 3041(a) provides that the parole board "shall meet with the

7    inmate" one year before the prisoner's minimum eligible parole date, and "shall normally set a

8    parole release date," that provision only applies after an inmate has been found suitable for

9    parole under Cal. Penal Code § 3041(b).  <u>Dannenberg</u>, 34 Cal.4th at 1078-79.  Petitioner reads

10   Cal. Penal Code § 3041 as requiring a parole release date to be set at the first meeting of the

11   parole board.  However, this Court is bound by the state supreme court's interpretation of state

12   law as set forth in <u>Dannenberg</u>.  See e.g. <u>Mullaney v. Wilbur</u>, 421 U.S. 684, 691 (1975)

13   (recognizing that state courts are "the ultimate expositors of state law," and federal courts are

14   bound by their constructions except in extreme circumstances such as where a state court's

15   interpretation of state law appears to be an "obvious subterfuge to evade consideration of a

16   federal issue.")  Petitioner has made no showing that the interpretation of Cal. Penal Code §

17   3041 here or in <u>Dannenberg</u> is an obvious subterfuge to evade consideration of his claims.

18   Rather, the Ninth Circuit has recognized that <u>Dannenberg</u>'s interpretation of Cal. Penal Code §

19   3041 is correct, <u>Irons</u>, 2007 WL 2027359 at *4 & n.3, and this Court is bound by that

20   interpretation.  Thus, Petitioner's contentions that the parole board lacked authority under state

21   law to deny parole, or exceeded its authority, and/or applied an invalid interpretation of state

22   law, do not provide a basis for habeas relief in this Court.

23         Petitioner next contends that the state parole board's reliance on static pre-commitment

24   factors such as his commitment offense and prior history to deny parole violated his federally-

25   protected liberty interest as identified in <u>Biggs v. Terhune</u>.  (Pet. Mem. at 14, citing, <u>Biggs</u>, 334

26   F.3d at 916-17 (noting that "continued reliance in the future on an unchanging factor, [such as]

27   the circumstances of the offense and conduct prior to imprisonment, runs contrary to the

28   rehabilitative goals espoused by the prison system and could result in a due process violation.").)

1    Respondent contends that the adjudication of this claim by the state appellate court was neither

2    contrary to, nor involved an unreasonable application of, clearly established federal law, because

3    Petitioner has no federally-protected liberty interest in parole release, and that even if such an

4    interest exists, he was entitled only to an opportunity to be heard and a statement of reasons for

5    the denial of parole, which he received.  (Ans. Mem. at 6-8.)  As set forth above, the Court

6    recommends rejecting Respondent's contentions in that regard.

7        It is unclear whether clearly established federal law provides that a due process violation

8    can arise from the continued use of static factors as suggested in Biggs.  The Ninth Circuit has

9    stated, albeit in an unpublished case, that, "[t]here is no 'clearly established federal law, as

10   determined by the Supreme Court of the United States,' that limits the number of times a parole

11   board may deny parole to a murderer based on the brutality and viciousness of the commitment

12   offense.  The dicta in Ninth Circuit cases like Biggs v. Terhune, 334 F.3d 910, 916-17 (9th Cir.

13   2003), are not holdings of the Supreme Court, as required by Carey v. Musladin, 549 U.S. --, 127

14   S.Ct. 649, 654-57 (2006) and Schriro v. Landrigan, -- U.S. --, 127 S.Ct. 1933, 1941-43 (2007)."

15   Culverson v. Davison, No. 06-56827, slip op. at * 2 & n.5, 2007 WL 1663682 (9th Cir. June 8,

16   2007) (unpublished memorandum decision).[2]  Nevertheless, even assuming a due process

17   violation could arise from reliance only on static factors, that did not happen in this case.  The

18   parole board here relied, in part, on static factors, such as Petitioner's commitment offense,

19   including the fact that it was "an offense that was very callous and was certainly carried out in

20   a dispassionate and a calculated manner. . . [and] the motive for the crime is inexplicable," as

21   well as the finding the Petitioner had failed previous grants of probation.  (Ans. Mem. Ex. 1 at

22   50.)  However, the board also relied on non-static factors, such as the finding that Petitioner had

23   not availed himself of the previously-recommended self-help, a recent psychiatric evaluation

24   which was conflicting as to Petitioner's risk for future violence, and the lack of confirmation of

25   Petitioner's parole plans.  (Id. at 50-52.)  Thus, Petitioner's contention that the parole board

26

27        [2] Unpublished Ninth Circuit decisions may be cited commencing with decisions issued in 2007.
     (See Ninth Cir. Rule 36-3.)  Although still not binding precedent, unpublished decisions have persuasive
28   value and indicate how the Ninth Circuit applies binding authority.

1  relied only on static factors is incorrect, and does not provide a basis for habeas relief.

2      Finally, Respondent contends that even if the "some evidence" test applies, there was

3  sufficient evidence to support the parole board's decision.  (Id. at 10-14.)  In determining

4  whether the "some evidence" standard has been satisfied, "the relevant question is whether there

5  is any evidence in the record that could support the conclusion reached by the disciplinary

6  board." Sass, 461 F.3d at 1128.  Petitioner was convicted of an extremely heinous crime, an

7  execution-style murder.  At the parole hearing Petitioner denied that the motive for the killing

8  was jealousy, as the appellate court had speculated, leaving the motive for the murder unclear.

9  (Ans. Mem. Ex. 1 at 29.)  Thus, the facts of the crime satisfy the criteria under California law

10  for a finding of unsuitability, including the fact that the offense "was carried out in a

11  dispassionate and calculated manner, such as an execution style murder," and "the motive for

12  the crime is inexplicable or very trivial in relation to the offense."  Cal. Code Regs, Title 15,

13  § 2402(c).  The findings regarding Petitioner's failure to self-help and the conflicting psychiatric

14  diagnosis are also supported by some evidence.  The parole board relied on findings by Dr. Mura

15  that Petitioner suffers from a personality disorder with narcissistic and paranoid features, that

16  he lacks insight, and has made an effort not to develop insight, regarding his commitment

17  offense, and that he lacks remorse for the killing.  (Ans. Mem. Ex. 1 at 51-52.) Because the facts

18  used by the parole board are amply supported by the record, and the evidence has sufficient

19  indicia of reliability, there is sufficient evidence in the record to support the conclusion reached

20  by the board, and no due process violation occurred.  Sass, 461 F.3d at 1128; Biggs, 334 F.3d

21  at 915; Jancsek, 833 F.2d at 1390.  Accordingly, the Court finds that the appellate court's

22  adjudication of this aspect of Petitioner's due process claim, on the basis that the parole board's

23  unsuitability determination was supported by "some evidence," is neither contrary to, nor an

24  unreasonable application of, clearly established federal law.  Sass, 461 F.3d at 1128; Biggs, 334

25  F.3d at 915.

26      **2)    Equal Protection**

27      Finally, Petitioner contends his right to equal protection under the Fourteenth Amendment

28  was violated because the state courts did not apply state law uniformly to him, in that they failed

to follow settled precedent.  (Pet. Mem. at 14-16.)  Respondent contends this claim does not present a federal question because errors of state law are not cognizable on federal habeas.  (Ans. Mem. at 14.) Respondent also contends that, even assuming the claim is cognizable, Petitioner's allegations that he was treated differently from similarly situated persons, or that there was not a rational basis for the disparate treatment, are wholly conclusory, and that habeas relief is unavailable for conclusory claims.  (<u>Id.</u> at 13-15.)

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." <u>City of Cleburne v. Cleburne Living Center, Inc.</u>, 473 U.S. 432, 439 (1985).  The question is not whether one state treats its prisoners the same as another state.  Rather, the question is whether California treats all similarly situated prisoners the same.  <u>See Addington v. Texas</u>, 441 U.S. 418, 431 (1979) ("The essence of federalism is that states must be free to develop a variety of solutions to problems and not be forced into a common, uniform mold.") Since the Ninth Circuit has consistently held that prisoners are not a protected class, <u>Glauner v. Miller</u>, 184 F.3d 1053, 1054 (9th Cir. 1999); <u>Webber v. Crabtree</u>, 158 F.3d 460, 461 (9th Cir. 1998); <u>Mayner v. Callahan</u>, 873 F.2d 1300, 1302 (9th Cir. 1989), even if Petitioner was treated differently than other similarly situated prisoners in California, the state could justify that treatment by showing a rational basis for the treatment. <u>City of Cleburne</u>, 473 U.S. at 440; <u>San Antonio Independent School District v. Rodriguez</u>, 411 U.S. 1, 55 (1973) ("The constitutional standard under the Equal Protection Clause is whether the challenged state action rationally furthers a legitimate state purpose or interest.").

Petitioner presented his equal protection claim to the state supreme court in a habeas petition, which was summarily denied without a statement of reasoning. (MTD Exs. 8-9.)  The claim was also presented to the appellate court in a habeas petition.  (<u>Id.</u>, Ex. 6.)  As quoted above, the appellate court order denying the habeas petition did not address the equal protection claim.  (<u>Id.</u>, Ex. 7.)  The claim was also presented to the state superior court in a habeas petition. (<u>Id.</u>, Ex. 4.)  That court also failed to address the claim.  (<u>Id.</u>, Ex. 5.)  Petitioner contends that

because the state courts did not address his equal protection claim, their decisions were contrary to controlling Supreme Court authority. (Traverse at 4.) However, where there is no lower state court opinion addressing a claim which was properly presented to the state courts and denied by the state's highest court without a statement of reasoning, as here, a federal habeas court reviewing such a claim is required to conduct an independent review of the record in order to determine whether the state supreme court clearly erred in its application of controlling federal law when it denied the claim without a statement of reasoning. Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002); Greene v. Lambert, 288 F.3d 1081, 1089 (9th Cir. 2002) ("(W)hile we are not required to defer to a state court's decision when that court gives us nothing to defer to, we must still focus primarily on Supreme Court cases in deciding whether the state court's resolution of the case constituted an unreasonable application of clearly established federal law.").

Petitioner has not shown differing treatment of similarly situated inmates. Rather, he alleges that the failure of the parole board and the appellate court to apply settled precedent to his case resulted in his being treated differently than the prisoners who were the parties in the cases he contends were not applied to him. (Pet. Mem. at 14-15; Traverse at 8-10.) This claim is based on the same incorrect interpretation of California law advanced by Petitioner in connection to his due process claim, namely, that under a favorable interpretation of California law, the parole board did not have the authority to deny parole after their first meeting. (Id.) As discussed above, Petitioner has failed to demonstrate that the parole board or the appellate court violated state law or failed to correctly apply relevant precedent, and has failed to show that the facts relied upon by the parole board to find him unsuitable for parole were not supported by evidence in the record. Accordingly, based on an independent review of the record, the Court finds that the adjudication of this claim by the state court was neither contrary to, nor involved an unreasonable application of, clearly established federal law. The Court therefore recommends denying habeas relief with respect to Petitioner's equal protection claim.

/ / /

/ / /

06cv2477

# VI.

## <u>CONCLUSION AND RECOMMENDATION</u>

For all of the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the Court issue an Order: (1) approving and adopting this Report and Recommendation; and (2) directing that Judgment be entered denying the Petition.

**IT IS ORDERED** that no later than <u>**December 3, 2007**</u> any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than <u>**December 14, 2007**</u>.  The parties are advised that failure to file objections with the specified time may waive the right to raise those objections on appeal of the Court's order.  <u>See</u> <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998); <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1156 (9th Cir. 1991).

DATED:  November 9, 2007

Hon. Nita L. Stormes
U.S. Magistrate Judge

CC:    HON. JANIS L. SAMMARTINO

       ALL PARTIES

-19-

06cv2477