# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS P. BOWLING,<br><br>    Petitioner,<br><br>vs.<br><br>ROBERT J. HERNANDEZ, Warden,<br><br>    Respondent. | CASE NO. 06-CV-2477-JLS (NLS)<br><br>**ORDER (1) OVERRULING PETITIONER'S OBJECTIONS, (2) ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, (3) DENYING PETITION FOR WRIT OF HABEAS CORPUS; and (4) DENYING CERTIFICATE OF APPEALABILITY**<br><br>(Doc. Nos. 1 & 28) |

Presently before the Court is Dennis P. Bowling's ("Petitioner") petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. No. 1.) Petitioner, a California prisoner proceeding pro se, challenges the finding of unsuitability for parole made at his eleventh parole hearing in 2004, claiming that he has been denied due process and equal protection in violation of the Fourteenth Amendment because the Board of Prison Terms[1] (the "Board") lacked the authority to deny him parole or exceeded its statutory authority. (Id.)

The matter was referred to United States Magistrate Judge Nita L. Stormes, pursuant to 28 U.S.C. § 636(b)(1). On November 9, 2007, Magistrate Judge Stormes issued a Report and

---

[1] The Board of Prison Terms is now called the Board of Parole Hearings.

1  Recommendation ("R&R"), concluding this Court should deny the habeas petition. On November
2  27, 2007, Petitioner timely filed objections to the R&R. (Doc. No. 28.) Respondent has not filed a
3  response to Petitioner's objections.

4      Having considered the R&R, Petitioner's objections, and the Court's record, the Court (1)
5  overrules Petitioner's objections, (2) adopts Magistrate Judge Stormes' Report and
6  Recommendation; (3) denies Petitioner's section 2254 petition; and (4) denies Petitioner a
7  certificate of appealability.

## FACTUAL BACKGROUND

9      Magistrate Judge Stormes' R&R contains a quoted statement of facts taken from the
10 opinion of the California Court of Appeal in Petitioner's criminal appeal in 1978. (R&R, at 3–5).
11 This statement of facts was also quoted and relied upon by the parole board at the hearing
12 challenged in the instant case. (Doc. 21, Ex. 1, at 14–18). This Order incorporates by reference
13 the facts as set forth in the R&R.

## PROCEDURAL HISTORY

### I. State Procedural History

16     On February 28, 1977, Petitioner was convicted of first degree murder in San Diego
17 Superior Court and sentenced to life imprisonment with the possibility of parole. At his eleventh
18 denial of parole, challenged here, the Board cited the following reasons for unsuitability for parole:
19 1) that the commitment offense was "callous and . . . carried out in a dispassionate and a calculated
20 manner"; 2) that the motive for the crime was inexplicable; 3) that Petitioner had failed previous
21 grants of probation; 4) that Petitioner had failed to participate in beneficial self-help; 5) that a
22 psychiatric evaluation was "not completely supportive"; and 6) that Petitioner did not have
23 specific parole plans. (Doc. 21, Ex. 1 at 50–54).

24     Petitioner challenged the Board's decision in a habeas petition filed in state superior court
25 on May 4, 2005. (Doc. 10-3, at 2.) After that petition was denied on the merits, he appealed his
26 case to the California Court of Appeal on August 23, 2005, where his petition was once again
27 denied on the merits. (Doc. 10-5, at 41-43.) He finally filed a petition for review in the state
28 supreme court on October 19, 2005. (Doc. 10-5, at 2.) The petition was summarily denied on

September 13, 2006, without citation of authority or statement of reasoning.

## II.  Federal Procedural History

Having exhausted the remedies available in the state courts, Petitioner filed the instant petition for a writ of habeas corpus in this Court, pursuant to 28 U.S.C. § 2254.  (Doc. No. 1). Respondent moved to dismiss the petition on the basis it was untimely and failed to state a federal question.  After this Court denied the motion to dismiss, Respondent filed an Answer to the petition, along with a Memorandum of Points and Authorities.  Petitioner filed a Traverse.

## LEGAL STANDARDS

### I.  Review of the Report and Recommendation

Rule 72(b) of the Federal Rules of Civil Procedure and 28 U.S.C. § 636(b)(1) set forth the duties of the district court in connection with a magistrate judge's report and recommendation. "The district court must make a *de novo* determination of those portions of the report . . . to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C.  § 636(b)(1)(c); see also United States v. Remsing, 874 F.2d 614, 617 (9th Cir. 1989); United States v. Raddatz, 447 U.S. 667, 676 (1980).

### II.  Review of Habeas Petitions Under 28 U.S.C. § 2254

Pursuant to 28 U.S.C. § 2254(a), this Court may only review claims within an application for a writ of habeas corpus based "on the ground that [the Petitioner] is in custody in violation of the Constitution or laws or treaties of the United States."  Where the Petitioner is "in custody pursuant to the judgment of a State court," this Court may only grant the petition if:

> the adjudication of the claim [either] (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under § 2254(d)(1), federal law must be "clearly established" in order to support a habeas claim.  The United States Supreme Court has held that "clearly established" "refers to the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state-court decision."  Williams v. Taylor, 529 U.S. 362, 412 (2000).  The Supreme Court has explained that a

state court decision may be "contrary to" clearly established precedent in two circumstances. First, "if the state court applies a rule that contradicts the governing law set forth in" decisions of the Supreme Court, it is "contrary to" clearly established law. Id., at 405. Second, where "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from our precedent," it will also be "contrary to" clearly established law. Id., at 406.

A state court decision involves an "unreasonable application" of clearly established law in two general cases. First, the "unreasonable application" test is satisfied "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id., at 407. Second, a state court unreasonably applies federal law where it "either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. Under the unreasonable application prong, "[i]t is not enough that a federal habeas court, in its 'independent review of the legal question,' is left with a 'firm conviction' that the state court was 'erroneous.'" Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (citations omitted). That is, "'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.' Rather, that application must be objectively unreasonable." Id., at 75–76 (citations omitted).

Finally, § 2254 authorizes habeas relief where the state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court." 28 U.S.C.A. § 2254(d)(2). This provision requires the petitioner to demonstrate by clear and convincing evidence that the factual findings upon which the state court's adjudication of his claims rest are objectively unreasonable. Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

**III.     Federal Law on Parole, Due Process, and Equal Protection**

Petitioner first claims that his due process rights have been violated. To demonstrate this violation, Petitioner must show that he has a protected interest with which the state has interfered

1  and that the procedures provided on that deprivation were constitutionally inadequate. Kentucky
2  Dept. of Corrections v. Thompson, 490 U.S. 454, 460 (1989). As both the R&R and the Petitioner
3  agree, the California parole statute "gives rise to a cognizable liberty interest in release on parole,"
4  McQuillion v. Duncan, 306 F.3d 895, 902 (9th Cir. 2002), which is "created, not upon the grant of
5  a parole date, but upon the incarceration of the inmate." Biggs v. Terhune, 334 F.3d 910, 915 (9th
6  Cir. 2003).

7      The R&R and the Petitioner also agree that in interpreting state laws such as the California
8  parole hearing statute at issue here, state courts are "the ultimate expositors of state law," and
9  federal courts "are bound by their constructions except in extreme circumstances." Mullaney v.
10 Wilbur, 421 U.S. 684, 691 (1975) (noting that the Court has re-examined state-court
11 interpretations of state law when they appeared to be "obvious subterfuge to evade consideration
12 of a federal issue."). On the issue of parole, the Ninth Circuit has held that the state meets the
13 minimum due process requirements for a parole hearing where "some evidence" in the record
14 supports the board's finding. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1127–28
15 (9th Cir. 2006); Jancsek v. Oregon Bd. Of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987). "[T]he
16 relevant question is whether there is any evidence in the record that could support the conclusion
17 reached by the disciplinary board." Sass, 461 F.3d at 1128 (quoting Superintendent of the Mass.
18 Corr. Inst. v. Hill, 472 U.S. 445, 455–56 (1985). The Ninth Circuit has also held that "the
19 evidence underlying the board's decision must have some indicia of reliability." Biggs, 334 F.3d
20 at 915 (quoting Jancsek, 833 F.2d at 1390).

21     Petitioner also claims that he was denied his Fourteenth Amendment right to equal
22 protection. Under the Equal Protection Clause of the Fourteenth Amendment, "all persons
23 similarly situated should be treated alike." City of Cleburne v. Cleburne Living Center, Inc., 472
24 U.S. 432, 439 (1985). Thus, to establish an equal protection claim, Petitioner would have to show
25 that he was treated differently than similarly situated inmates.

26 **ANALYSIS**
27 **I.       Petitioner's Due Process claims**
28     Petitioner claims that he was denied his Fourteenth Amendment right to due process

1  because (1) according to Petitioner's reading of California Penal Code § 3041, the Board lacked
2  the statutory authority to deny him parole after the initial parole consideration hearing; and (2) in
3  denying parole at his eleventh parole hearing, the Board impermissibly relied on static factors such
4  as the nature of the commitment offense and his prior history and placed undue weight on other
5  factors.

6        The R&R recommends denying habeas relief on Petitioner's due process claims. Correctly
7  following the state court's interpretation of state law, the magistrate judge discussed the California
8  Supreme Court's holding in In re Dannenberg that parole release dates are only set after an inmate
9  has first been found suitable for release under § 3041(b). Dannenberg, 34 Cal.4th 1061, 1078–79
10 (2005). The Ninth Circuit has recognized this interpretation of § 3041 as being correct. See Irons
11 v. Carey, 505 F.3d 846, 851 ("'[A] determination of an individual inmate's suitability for parole
12 under section 3041, subdivision (b) must precede any effort to set a parole release date under the
13 uniform-term principles of section 3041, subdivision (a).'") (quoting Dannenberg, 34 Cal.4th at
14 1079-80).

15       Petitioner objects to the R&R's reliance on Dannenberg in interpreting California Penal
16 Code § 3041 and asserts that, pursuant to §3041(b), the Board was required to set a parole release
17 date at the initial parole hearing. Petitioner argues that because the Board is permitted to defer his
18 eligibility for parole until he is determined to be suitable for parole, the Board has exceeded its
19 authority and has effectively re-sentenced him to a term of life imprisonment without possibility of
20 parole, instead of life imprisonment with the possibility of parole.

21       In analyzing Petitioner's claims, the Court reviews the last reasoned state court decision to
22 determine whether Petitioner's due process rights have been violated. Ylst v. Nunnemaker, 501
23 U.S. 797, 804 (1991). In this case, the California Supreme Court denied Petitioner's petition
24 without comment. (Doc. 10-5, at 2.) Thus, this Court must look through that decision to the
25 decision by the court of appeals. Ylst, 501 U.S. at 804. With respect to Petitioner's claim that the
26 Board exceeded its statutory authority by denying him parole, the court of appeal held:

27         The Board is not required to grant Bowling parole merely because
    Bowling's minimum eligible parole date has passed or his incarceration has
28

> exceeded the matrix of base terms for his offense. Rather, the Board may properly deny Bowling parole if the Board decides it would be unsafe to grant him parole and the decision is supported by some evidence. (*In re Dannenberg* (2005) 34 Cal.4th 1061, 1071.)
>
> The criteria relied upon by the Board to assess Bowling's suitability for parole is valid. (*In re Seabock* (1983) 140 Cal.App.3d 29, 38-39.) Although Bowling failed to provide a complete record of the parole hearing, the record contains sufficient evidence to support the Board's decision. Specifically, there is some evidence: (1) the offense was carried out execution style for trivial reasons; (2) Bowling has not availed himself of self-help opportunities; (3) the most recent psychosocial evaluation is equivocal in its assessment of Bowling's potential for success on parole; and (4) Bowling's parole plans are vague.

(Doc. 10-5, at 42).

As the R&R recognizes, the court of appeal's decision is entirely consistent with California Supreme Court authority. Under subdivision (b) of Cal. Penal Code § 3041, a parole release date shall be set "*unless* [the Board] determines" that the inmate is presently *unsuitable* for the fixing of a parole date." Dannenberg, 34 Cal.4th at 1079 (emphasis in original). Moreover, as noted by the magistrate judge, the Ninth Circuit has recognized that Dannenberg's interpretation of Cal. Penal Code § 3041 is correct. Irons, supra. Because the California Supreme Court and the Ninth Circuit have both recognized that suitability determinations under Cal. Penal Code § 3041(b) must come before *any* setting of parole release dates, this Court must reject Petitioner's various arguments for a reinterpretation of the Dannenberg decision and/or the state statute.

The Court is also not persuaded by Petitioner's argument that Dannenberg is inapplicable to his case because in a previous habeas petition, the court found his sentence to be a determinate sentence. (Order Denying Petition for Writ of Habeas Corpus, 03cv0332.) Although the facts of Dannenberg involved an inmate sentenced to an indeterminate term of life imprisonment, the court's conclusion that a suitability determination pursuant to subdivision (b) must precede any setting of parole release dates was based primarily upon the plain language of the statute, which contains no distinction between determinate and indeterminate sentences. Furthermore, the California Supreme Court has recognized that under both the pre-1976 Indeterminate Sentence Law and the current Determinate Sentencing Act of 1976, a life prisoner must first be found suitable for parole before a parole date is set. In re Stanworth, 33 Cal.3d 176, 183 (1982). The Court therefore rejects Petitioner's objections to the R&R relating to the interpretation of Cal.

Penal Code § 3041 and his suggestion the Board lacked the statutory authority to deny him parole.

Petitioner next raises several objections to the R&R's findings with respect to the factors relied upon by the Board in determining his lack of suitability for parole. First, Petitioner objects to R&R's conclusion that the Board's determination was not based solely on static factors. The extent to which the nature of the commitment offense, considered alone, may be used to deny parole has not been addressed by the United States Supreme Court. The Ninth Circuit has simply stated that reliance on a petitioner's commitment offense should decrease over time. Biggs v. Terhune, 334 F.3d 910, 916 (9th Cir. 2003). However, as the R&R correctly notes, even if a due process violation could arise from reliance on static factors alone, the Board also cited several other factors in its finding of unsuitability for parole: that Petitioner had failed to participate in beneficial self-help; that a psychiatric evaluation was "not completely supportive"; and that Petitioner did not have specific parole plans. (Doc. 21, Ex. 1 at 50–54).

Petitioner next objects to the R&R's reliance on his failure to participate in self-help, arguing that "self-help" is not listed in the regulation that describes parole suitability criteria. (Objections, 9–10). Yet that same regulation gives discretion to the panel, stating that "[a]ll relevant, reliable information . . . shall be considered in determining suitability for parole" and noting that the listed criteria "are set forth as general guidelines; the importance attached to any circumstance or combination of circumstances in a particular case is left to the judgment of the panel." Cal. Code Regs. tit. 15 § 2281(b)–(c).[2] The Board's use of the self-help factor is certainly relevant to determining Petitioner's suitability for parole.

Petitioner also objects to the R&R's statement that the psychiatrist's evaluation was "not completely supportive" of parole, claiming the report was "unequivocal" because it concluded that his risk for violence was low. (Objections, at 10.) However, the psychiatric evaluation also discusses Petitioner's lack of remorse and lack of insight about the commitment offense. (Doc. 21, Ex. 1, at 51–52). Thus, the psychiatrist's language provides "some evidence" that the evaluation

---

[2] The R&R incorrectly cites Cal. Code Regs. tit. 15 § 2402 when discussing parole consideration criteria and guidelines. § 2402 applies only to murders committed after November 1, 1978, and Petitioner's commitment offense was committed in 1975. However, the error is inconsequential because the correct regulation, Cal. Code Regs. tit. 15 § 2281, is identical.

1  was "not completely supportive of" parole.

2  Petitioner finally argues that the Board's statement that he had no specific parole plans
3  "lacks all evidentiary merit" because he completed an "office services" vocational course in 1994.
4  (Objections, at 11.)  Yet at the parole hearing, the Board also noted that Petitioner had no letters in
5  his file to support the offers of employment he claimed.  (Doc. 21, Ex. 1, at 25–27.)  Thus, "some
6  evidence" also supports the finding that Petitioner lacked specific parole plans.

7  In sum, the Board's decision to deny parole was made up of both static and non-static
8  factors.  Furthermore, because the decision was supported by "some evidence," it did not violate
9  Petitioner's right to due process.

10 **II.    Petitioner's Equal Protection Claim**

11  Petitioner's equal protection claim arises directly from his due process claim:  he argues that
12 he was treated differently from inmates who were granted parole because the state courts did not
13 grant him the benefit of a favorable interpretation of the California parole statute.  (Objections, at
14 13–14.)  Because none of the state courts addressed Petitioner's equal protection claim, this Court
15 is required to conduct an independent review of the record to determine whether the state court's
16 resolution was an unreasonable application of clearly established law.  Pirtle v. Morgan, 313 F.3d
17 1160, 1167 (9th Cir. 2002); Greene v. Lambert, 288 F.3d 1081, 1089 (9th Cir. 2002).  The R&R
18 recommended denying habeas relief with respect to the equal protection claim, correctly noting
19 that Petitioner's equal protection argument ultimately becomes the same as his due process
20 argument, and because the due process argument fails, the equal protection argument fails as well.

21  Petitioner objects to the R&R's recommendation, arguing that he belongs to a class of
22 prisoners who are subject to a penal law that is "susceptible of two constructions."  (Objections, at
23 14.)  Yet for all the reasons noted above, Cal. Penal Code § 3041 is only susceptible to one
24 construction in the Ninth Circuit.  Petitioner then claims that, under City of Cleburne, supra, the
25 state courts were required to provide a rational basis for the alleged differing treatment.
26 (Objections, at 14.)  However, since the differing treatment was never established in the first place,
27 the courts were not required to provide a rational basis, and thus, this objection also fails.  The
28 Court finds that the state court's resolution of this claim was neither contrary to, nor involved an

unreasonable application of, clearly established federal law.

## CONCLUSION

For the reasons stated above, the Court hereby **OVERRULES** Petitioner's Objections, **ADOPTS** Magistrate Judge Stormes' Report and Recommendation, and **DISMISSES** the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Additionally, the Court **DENIES** Petitioner a certificate of appealability, as Petitioner has not made a substantial showing that he has been denied a constitutional right. See 28 U.S.C. § 2253(c) (providing that a certificate shall issue "only if the applicant has made a substantial showing of a denial of a constitutional right").

**IT IS SO ORDERED.**

DATED: February 26, 2009

Honorable Janis L. Sammartino
United States District Judge